IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **RAFAEL RODRIGUEZ, individually and on behalf of all others similarly situated,** | Civil Action No. 1:15-cv-3087-AT |
| **Plaintiff,** | |
| **v.** | JURY TRIAL DEMANDED |
| **CASTFORCE, INC.,** | |
| **Defendant.** | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS COMPLAINT**

---

Plaintiff Rafael Rodriguez, individually and on behalf of all others similarly situated, hereby responds in opposition to the Motion to Compel Arbitration and to Dismiss Complaint of Defendant Castforce, Inc.,[1] showing the Court as follows:

1.    **SUMMARY OF THE ARGUMENT**

Plaintiff Rodriguez alleges that Defendant Castforce has improperly misclassified him and all other Retail Merchandisers it employed as independent contractors in a common policy and scheme to avoid payment of minimum and overtime wages. Castforce now seeks to force Rodriguez into arbitration and thus

---

[1] Dkt. 8.

1

prevent other similarly situated workers who have been victimized by its common policy of misclassifying employees as independent contractors from receiving notice of this collective action and being offered an opportunity to join it.

Castforce's arguments in its Motion to Compel Arbitration must fail, because the Independent Contractor Agreement (hereinafter "the Agreement") that it required Rodriguez to sign is unenforceable for several reasons:

- First, the Agreement is not retroactive, and Rodriguez has never agreed to arbitrate his claims related to the period prior to its execution;

- Second, Rodriguez has unilaterally terminated the Agreement, as the Agreement clearly unequivocally permits him to do;

- Third, the Agreement is illusory and thus fails for want of consideration, because it is terminable by either party, unilaterally, at any time, for any reason and without advance notice; and

- Finally, the Agreement is unenforceable because its loser-pays provision, its Sarasota forum requirement, and its adoption of AAA's *commercial* rather than *employment* rules, would prevent Rodriguez from effectively vindicating his rights under the FLSA.

For these reasons, Defendant's motion to compel arbitration must be denied and this collective FLSA action must be litigated in this Court.

## 2.    FACTUAL BACKGROUND

Rodriguez filed this putative collective action on September 1, 2015, alleging that Castforce violated the minimum wage and overtime provisions of the

Fair Labor Standards Act both with respect to him and to all other individuals who have worked for Castforce as "retail merchandisers."[2] Rodriguez alleges that Castforce represents itself to the public as a "network for independent contractors dedicated to providing professional retail services,"[3] but that Castforce actually hires hundreds of unskilled workers to travel to various retail locations and re-stock and organize the retail displays containing the products of Castforce's clients.[4] These retail locations include Walgreens, Rite Aid, Walmart, HEB, Kroger, 7Eleven, and Albertsons, and the products include sunglasses, gift cards, cosmetics, and packaged foods.[5] Rodriguez alleges that Castforce provided him and other retail merchandisers with all the materials needed to perform their jobs aside from a car and computer, and that all of Castforce's retail merchandisers serve only Castforce's existing clients, and that they do not solicit clients independently.[6] Castforce retail merchandisers "are located across the United States."[7]

---

[2] Dtk. 1, ¶¶ 1–2.
[3] Dkt. 1, ¶ 12.
[4] Dkt. 1, ¶ 13.
[5] Dkt. 1, ¶¶ 13, 16.
[6] Dkt. 1, ¶¶ 17–18.
[7] Dkt. 8–1, pg. 2.

In lieu of an Answer, Castforce filed a Motion to Compel Arbitration and to Dismiss Complaint,[8] on the basis of an Independent Contractor Agreement signed by Plaintiff Rodriguez.[9] The Agreement—signed on July 4, 2013—purports to create an independent contractor relationship between Rodriguez and Castforce. In relevant part, the Agreement also contains the following provisions:

### 1)   PARTIES AND TERM

. . . This Agreement will become effective when signed by both parties **and will continue in effect only for the duration of any work award offered by Castforce and accepted by Contractor.** If Castforce offers, and Contractor accepts successive work awards, this Agreement shall govern those awards as well, unless it has been revoked by either party. . . . **Either party may terminate this Agreement in writing or verbally at any time with or without cause by notifying the other party.**

(Emphasis added.)                …

### 7)   GENERAL PROVISIONS

This Agreement supersedes any and all other agreements between the parties. Any modification of this Agreement will be effective only if it is in writing and signed by both parties, except that **either party may terminate this Agreement unilaterally**. . . . If any provision in this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way. This Agreement shall be governed by the laws of the State of Florida. **Any controversy or claim arising out of or**

---

[8] Dkt. 8.
[9] Dkt. 8-1, pg. 3–5.

> *related to this Agreement shall be settled by arbitration in accordance with the rules of the American Arbitration Association then in effect for commercial disputes in Sarasota, FL* and judgment upon the award may be entered in any court having jurisdiction thereof. Arbitration is an alternative to judicial litigation. It requires the payment of certain fees. The Arbitrator's decision is generally final and not appealable. This constitutes a waiver by both sides of the right to sue in a court of law to enforce this Agreement. If any arbitration or other legal action is commenced or necessary to enforce or interpret the terms of this Agreement, *the prevailing party shall be entitled to reasonable attorney's fees, costs, and necessary disbursements in addition to any other relief to which that party may be entitled.*[10]

As alleged by Castforce, "[u]pon receipt of [Rodriguez'] Complaint, counsel for Castforce contacted counsel for Plaintiff seeking to secure his agreement on the arbitration of this matter. Plaintiff, through his counsel, has refused to submit the dispute to arbitration."[11]

On October 7, 2015, counsel for Plaintiff Rodriguez sent the following correspondence to counsel for Defendant Castforce:

> Messrs. Coburn and Barack:
>
> As you know, this firm represents Mr. Rafael Rodriguez with respect to his relationship with Castforce, Inc. To the extent that your client did not under[s]tand that Mr. Rodriquez' filing of his FLSA action United States District Court constituted a termination of the Independent Contractor Agreement, please be advised that pursuant to Paragraphs 1 and 7 of the Agreement, either party has the right to

---

[10] Dkt. 8-1, pp. 3–4 (emphasis added).
[11] Dkt. 8, pg. 2.

terminate the Agreement unila[t]erally at any time, with or without cause, verbally or in writing. Mr. Rodriguez has exercised that right and terminated the Agreement by the filing of his Complaint and, while not necessary, again by this email. It is also Mr. Rodri[g]uez' position that Castforce terminated the Agreement at the time it terminated him. For convenience, I have annexed a copy of the Agreement.

Please feel free to contact me if you have any questions or would like to discuss this matter further. Thank you.

/s/ Mitchell D. Benjamin[12]

One of Rodriguez' current counsel, Matthew Herrington, recently attempted to obtain the hourly rates of AAA commercial arbitrators working in Sarasota Florida.[13] An administrator at AAA's Southeastern Regional Office informed him that AAA would not provide the hourly rates of its arbitrators until after an arbitration demand had been filed.[14] Alternatively, AAA would accept $750 to provide the resumes and rates of a representative sample of its arbitrators.[15] Plaintiff's counsel did not advance Rodriguez the funds to purchase arbitration rates, believing that it was not a reasonable expense of litigation.[16] However, Herrington does possess a packet of packet containing resumes and 2015 rates for a

---

[12] Exhibit 1 (Declaration Mitchell D. Benjamin); Exhibit 2 (Declaration of Rafael Rodriguez) at ¶ 7.
[13] Exhibit 3 (Declaration of Matthew W. Herrington) at ¶¶ 3–4.
[14] Exhibit 3 at ¶ 5.
[15] Exhibit 3 at ¶ 5.
[16] Exhibit 3 at ¶ 7.

selection AAA's **employment** arbitrators in the Atlanta, Georgia area.[17] Those arbitrators' rates range from a low of $200 for study up to a high of $480 per hour, and daily fees for hearings range up to $3,600 per day.[18]

Rodriguez is currently employed as a claims administrator and his monthly net income, after taxes and withholdings, is approximately $3,200.[19] He lives with his wife, whose monthly net wages are approximately $400.[20] Two adult children live with them.[21] He and his wife have monthly expenses of $3,817, which exceeds their current monthly income.[22] Their savings amount to only $4,500, and neither Rodriguez nor his wife have substantial access to additional credit.[23] Although Rodriguez has brought this action in good faith and believes that Castforce has violated the FLSA, he cannot estimate the likelihood of whether or not he will prevail in arbitration, or the risk that he and his family would face financial ruin from large arbitration costs in the event that he did not prevail.[24]

---

[17] Exhibit 3, Attachment A.

[18] Exhibit 3 at ¶ 9, Attachment A.

[19] Exhibit 2 at ¶¶ 17–18.

[20] Exhibit 2 at ¶ 19.

[21] Exhibit 2 at ¶ 19.

[22] Exhibit 2 at ¶¶ 20–21.

[23] Exhibit 2 at ¶ 23.

[24] Exhibit 2 at ¶¶ 24–27.

### 3.   ARGUMENT AND CITATIONS TO AUTHORITY

#### a.   The Court Should Decide Whether a Valid Agreement to Arbitrate Exists

> In certain limited circumstances, courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter. These limited instances . . . . include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy.[25]

Thus, under the well-established rule that courts decide gateway questions of arbitrability, any dispute as to whether a valid arbitration agreement exists must be determined by the court, rather than by an arbitrator.

#### b.   Interpreting And Enforcing Arbitration Agreements Is A Matter Of Contract Law

"[A]rbitration is a matter of contract."[26] "[T]he FAA's central purpose is to ensure that private agreements to arbitrate are enforced according to their terms,"[27] and parties are "generally free to structure their arbitration agreements as they see fit"[28]. The task is to interpret and enforce a contract, not to make public policy.[29]

---

[25] *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 123 S. Ct. 2402 (2003) (citations omitted).

[26] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 333, 131 S. Ct. 1740, 1745 (2011) (quotation omitted).

[27] *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S. Ct. 1758 (2010) (quotation omitted); see also *AT&T Mobility LLC*, 563 U.S. at 333, 131 S. Ct. at 1745 (courts must enforce arbitration agreements "according to their terms").

[28] *Stolt-Nielsen S. A.*, 559 U.S. 662, 130 S. Ct. 1758 (2010) (quotation omitted).

"[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists."[30] "[I]t is well-established" under Florida law "that contracts are construed against the drafter in the face of any ambiguities."[31] This rule of construction applies with equal force to agreements to arbitrate.[32]

### c.   The Parties Did Not Intend For The Independent Contractor Agreement To Be Retroactive

Rodriguez began his employment with Castforce in 2011.  The Agreement was executed by the parties on July 4, 2013.  The Agreement is silent as to matters predating its execution, instead, refering only to "[a]ny controversy or claim arising out of or related to this Agreement . . . ."[33]

The Eleventh Circuit has addressed issues of retroactivity in arbitration agreements several times, and most recently in *Carter v. Doll House II, Inc.*:

> The [] Agreement clearly refers "only" to "any dispute regarding this contract/agreement." This arbitration clause is similar to one we examined in *Thomas v. Carnival Corp.*, 573 F.3d 1113, 1116–17 (11th Cir. 2009), abrogation recognized by *Williams v. NCL* (Bahamas) Ltd., 686 F.3d 1169 (11th Cir. 2012). In *Thomas*, we refused to apply

---

[29] *Id. at 663.*

[30] *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005).

[31] *Nat'l Merch. Co. v. United Serv. Auto. Asso*c., 400 So. 2d 526 (Fla. Dist. Ct. App. 1st Dist. 1981) (citing *Planck v. Traders Diversified, Inc.*, 387 So.2d 440, 441 (Fla. 4th DCA 1980); *Hurt v. Leatherby Insurance Co.*, 380 So.2d 432, 434 (Fla. 1980)).

[32] *See, e.g., Bullard v. Capital One, F.S.B.*, 288 F. Supp. 2d 1256, 1260, n.7 (N.D. Fla. 2003).

[33] Dkt. 8-1, pg. 4.

retroactively an arbitration clause that provided "[a]ny and all disputes *arising out of or in connection with this Agreement*, . . . shall be referred to, and finally resolved by arbitration." *Id.* at 1117. We concluded that "if the parties had intended retroactivity, they would have explicitly said so." *Id.* at 1119. Because there is nothing in the October Agreement regarding retroactivity, we conclude the district court correctly refused to apply the arbitration provision to any claims [relating to the period prior to its execution].[34]

Nothing in the text of the Agreement at issue in this case suggests that the parties intended it to be applied retroactively to Rodriguez' earlier period of work. Just as in *Carter* and *Thomas*, where the Parties did not agree to retroactivity, retroactive enforcement is improper.   Thus, all of Rodriguez' claims accruing before July 4, 2013 are properly before this Court under any circumstances.

### d.    The Agreement has Been Terminated In Accordance With Its Terms

In this case, the Agreement—drafted entirely by Castforce and presented to Rodriguez as a contract of adhesion[35]—twice explicitly references termination of the Agreement. In the first paragraph, the Agreement provides that "[e]ither party may terminate this Agreement in writing or verbally at any time with or without cause by notifying the other party."[36] Then, in the seventh paragraph—the very paragraph containing the arbitration provision—the Agreement again states that

---

[34] 608 Fed. App'x 903, 904 (11th Cir. 2015).
[35] Exhibit 2 at ¶¶ 4–6.
[36] Dkt. 8-1, pg. 3.

"either party may terminate this Agreement unilaterally."[37] Additionally, the Agreement states in its opening paragraph that it "will continue in effect only for the duration of any work award offered by Castforce and accepted by Contractor." The plain text of that sentence mandates that the Agreement and all its terms only continue through the period of time that Castforce actually give Rodriguez work awards, and that it has no effect after his termination. To hold otherwise would make this contractual provision thoroughly without any meaning or purpose.

Regardless of whether or not the Agreement terminated automatically upon Rodriguez' termination, Rodriguez terminated the Agreement unilaterally, as the Agreement explicitly permits him to do. First, he terminated the Agreement when he filed this lawsuit and gave Castforce notice of his intention not to be bound by the Agreement by serving the complaint and summons. He again terminated the Agreement when, after being presented with the Agreement by Castforce's counsel, he refused to arbitrate. And Rodriguez terminated the Agreement a third time when, after Castforce filed its Motion to Compel, his counsel emailed Castforce's counsel and reaffirmed his termination.

The Agreement does not state that termination may be prospective only (i.e., respecting claims yet to arise). It does not state that termination must occur before

---

[37] Dkt. 8-1, pg. 4.

the filing of a lawsuit. Instead, the Agreement unambiguously states that termination may occur at *any time*. Various courts have interpreted similar language as permitting retroactive termination—typically doing so in the context of finding the arbitration agreement illusory for lack of consideration.[38]

While Rodriguez' right to terminate the Agreement is unambiguous, should Castforce now argue that the termination provisions are ambiguous as to time of termination and retroactive effect, its arguments must fail, because any ambiguities must be resolved in Rodriguez' favor.

Because Rodriguez has availed himself of the Agreement's express termination provisions and has unilaterally terminated the Agreement by giving notice to Castforce, Defendant's Motion to Compel must be denied.

### e.     The Agreement Is Illusory And Thus Fails For Lack Of Consideration

It is basic hornbook law that a contract which is not mutually enforceable is an illusory contract.[39] Where one party retains to itself the option of fulfilling or

---

[38] *See, e.g., Betts v. SGE Mgmt., LLC*, 402 Fed. App'x 475 (11th Cir. Ga. 2010) ("nothing in Betts's contract would have prevented the defendants from avoiding their promise to arbitrate by modifying the agreement just before filing suit."); *Dumais v. American Golf Corp.*, 299 F.3d 1216 (10th Cir. 2002) (an arbitration agreement was illusory because the agreement granted the employer the unfettered right to alter the existence of the agreement).

[39] *Pan-Am Tobacco Corp. v. Department of Corrections*, 471 So. 2d 4 (Fla. 1984) (citing *Howard Cole & Co. v. Williams*, 27 So.2d 352 (1946)).

declining to fulfill its obligations under the contract, there is no valid contract and neither side may be bound.[40] If a party's promise is "so insubstantial as to impose no obligation at all . . . in effect, 'I will if I want to' . . . then that promise may be characterized as an 'illusory' promise . . . . An illusory promise does not constitute consideration for the other promise, and thus the contract is unenforceable against either party."[41]

In this case, not only is the arbitration provision illusory, but the *entire Agreement* is illusory because the entire Agreement may be terminated "unilaterally," by "[e]ither party," "in writing or verbally at any time with or

---

[40] *Id.* (citing *Miami Coca-Cola Bottling Co. v. Orange-Crush Co.*, 291 F. 102 (D. Fla. 1923), affirmed, 296 F. 693 (5th Cir. 1924)).

[41] *ContractPoint Fla. Parks, LLC v. Dep't of Envtl. Protection*, 958 So. 2d 1035, 2007 Fla. App. LEXIS 8726 (Fla. Dist. Ct. App. 1st Dist. 2007) (quoting *Johnson Enter. of Jacksonville, Inc. v. FPL Group*, Inc., 162 F.3d 1290, 1311 (11th Cir. 1998); *see also Flagship Resort Dev. Corp. v. Interval Int'l, Inc.*, 28 So. 3d 915, 2010 Fla. App. LEXIS 527 (Fla. Dist. Ct. App. 3d Dist. 2010) ("in a bilateral contract a promise that permits the promisor to fulfill or decline to fulfill its contractual obligations at its option is not binding on the promisor and renders the promise incapable of enforcement by the promise") (citing *Pan-Am Tobacco Corp. v. Dep't of Corrs.*, 471 So. 2d 4, 5 (Fla. 1984) ("[A] contract which is not mutually enforceable is an illusory contract."); *Rosenberg v. Lawrence*, 541 So. 2d 1204, 1206 (Fla. 3d DCA 1988) ("Where one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract, there is no valid contract and neither side may be bound.").

without cause . . ." for any reason whatsoever and without any advance notice requirement.[42]

Imagine a scenario in which Rodriguez agreed to arbitrate his claims, paying all applicable fees required by the arbitrator, and taking on the risk that he will be saddled with Castforce's costs and fees should he not succeed on his claims. The Agreement would, by its terms, permit Castforce to terminate its agreement to arbitrate if the arbitration appeared to be going in Rodriguez' favor.  Rodriguez would have that same right. In reality, the "Agreement" is no agreement at all.

Of course, not all modification or termination provisions necessarily result in an illusory and unenforceable contract. Where certain obligations in a contract are binding, and others are subject to unilateral modification, a contract will not be found to be illusory.[43] Similarly, when a contract provides an advance notice requirement, and all parties will thus have an opportunity to accept or decline the modification or termination, the contract is not illusory. For example, in *In re Halliburton Co*., the Supreme Court of Texas found that a 10-day advance notice

---

[42] Exhibit 8-1, pp. 3–4.

[43] *See, e.g.*, *Flagship Resort Dev. Corp. v. Interval Int'l, Inc*., 28 So. 3d 915, 2010 Fla. App. LEXIS 527 (Fla. Dist. Ct. App. 3d Dist. 2010) ("because Interval's promise to perform the duties enumerated in Section (D)(1) is not subject to the Section (D)(4) reservation of its right to change the terms and conditions of the Interval Network, the RAA is binding on Interval, capable of enforcement by Flagship, and is not illusory.").

requirement did not permit an employer to terminate a contract at its sole discretion.[44] The *Hallburton* court also noted that the contract in that case was not subject to the employer's termination "as to Disputes which arose prior to the date of termination."[45] Together with the 10-day advance notice requirement, this prospective application limitation rendered the contract enforceable.[46] Numerous other courts have reached the same conclusion in similar circumstances.[47]

The present case is most analogous to *Betts*, where the Eleventh Circuit held that, under Texas law, an arbitration agreement that gave one party the "ability to immediately amend or termination the . . . agreement made [its] promise to arbitrate illusory."[48] Just as in *Betts*, performance by Castforce—and also by

---

[44] *In re Halliburton Co*., 80 S.W.3d 566, 569–70, 2002 Tex. LEXIS 70 (Tex. 2002).

[45] *Id.*

[46] *Id.*

[47] *E.g.*, *Betts v. SGE Mgmt., LLC*, 402 Fed. App'x 475 (11th Cir. Ga. 2010) (ability to immediately amend or terminate the arbitration agreement made promise to arbitrate illusory); *Caley v. Gulfstream Aero. Corp*., 428 F.3d 1359 (11th Cir. Ga. 2005) (agreement not illusory where 30-days advance notice of modification or termination was required, and where version of the agreement in effect at the time a claim was received governed the claim); *Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC*, 379 F.3d 159, 174-75 (5th Cir. 2004) ("The fact that the company has the right to change the terms upon notice does not mean that the contract never bound it.").

[48] *Betts*, 402 Fed. App'x 475 (11th Cir. 2010)

Rodriguez—was wholly optional at all times. The Agreement is therefore no agreement at all, and is not binding on either party.

### f.   The Agreement's Oppressive Terms Would Prevent Rodriguez from Vindicating His Rights Under the FLSA

"[T]he FLSA entitles a prevailing defendant to attorney's fees only where the district court finds that the plaintiff litigated in bad faith."[49] The rationale for this was expressed eloquently shortly after the FLSA became law:

> The government has set up a regulatory system for the benefit of persons in the plaintiff's class. . . . Suits by plaintiffs, if well founded, are in the public interest. Therefore, the cost of prosecuting successful suits should be borne not by those who were victims but by those who have violated the regulations and caused the damage. The fear of this liability for double damages and attorney's fees not only aids compliance, but promotes the settlement of controversies at the conference table or in the administrative office rather than the courts. No similar points, it is thought, can be made for imposing on an unsuccessful plaintiff the costs of the defendant's lawyer. The defendant's vindication in a larger sense serves the interests of justice, but no more so than the successful defense of any suit. . . . Moreover, *to allow him to recover his out-of-pocket expenses would deter suits by the plaintiffs who under the Fair Labor Standards Act . . . are assumed, often correctly, to be necessitous persons requiring the protective hand of the legislature. Such deterrence runs counter to the policy of the Act in placing reliance for enforcement both upon private suits and public suits.*[50]

---

[49] *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1437 (11th Cir. 1998).

[50] *Hutchinson v. William C. Barry, Inc.*, 50 F. Supp. 292 (D. Mass. 1943) (emphasis added).

The obvious deterrent to workers bringing FLSA claims that the risk of paying all defense costs would engender has been recognized by courts in this circuit:

> . . . [E]ven if [plaintiffs] are found to be independent contractors, they **cannot automatically be held liable for Defendants' attorneys' fees** incurred defending against their FLSA claims. . . . Defendants' entitlement to attorneys' fees is conditioned on a finding that the [plaintiffs] conducted the litigation in bad faith, vexatiously, wantonly or for oppressive reasons. **To hold otherwise would impose a chilling effect that would defeat the remedial purpose of the FLSA**.[51]

Despite the fact that such fee-shifting provisions are clearly at odds with the fundamental purposes and language of the FLSA, the Eleventh Circuit has held that an arbitration provision requiring the losing party to pay the other party's attorney's fees and expenses will not **necessarily** prevent an FLSA plaintiff from vindicating his statutory rights. In *Musnick v. King Motor Co. of Fort Lauderdale*, the court held that such cost-shifting agreement must be considered on a case-by-case basis.[52] It further held that, the party seeking to avoid arbitration "has the burden of establishing that enforcement of the agreement would preclude him from effectively vindicating his federal statutory right in the arbitral forum."[53]

---

[51] *Abdul-Rasheed v. KableLink Communs., LLC*, 2013 U.S. Dist. LEXIS 167159, 2013 WL 6182321 (M.D. Fla. Nov. 25, 2013) (quotations omitted) (emphasis added).
[52] 325 F.3d 1255, 1259 (11th Cir. 2003).
[53] *Id.*

Importantly, in those cases where such an arbitration agreement has been enforced, the courts have noted the existence of one of two factors. Either (1) the plaintiff had *made no showing* that he would likely be unable to vindicate his rights in arbitration as a result of the fee-shifting provision, or (2) the arbitrator would have the *discretion to limit any award* of attorney's fees to a prevailing defendant in the case of hardship to the plaintiff. Neither factor is present in this case.

In *Bess v. Check Express*, for example, the Eleventh Circuit could find "no support" in the record for the district court's factual findings that the plaintiff could not afford the cost of arbitration, and the arbitration agreement itself "[wa]s silent on the issue of arbitration costs."[54] And in *Musnick v. King Motor Co.*, the Eleventh Circuit noted that the plaintiff had wholly failed to show that "prohibitive costs [would] force him to relinquish his claim under Title VII."[55] It held that the plaintiff had "adduced no evidence whatsoever to support this claim, and the risk he alleged was "simply too 'speculative' to render his agreement to arbitrate unenforceable."[56] And again, in *Zulauf v. Amerisave Mortg. Corp.*, Judge Duffey

---

[54] 294 F.3d 1298 (11th Cir. 2002).
[55] 325 F.3d 1255 (11th Cir. 2003).
[56] *Id.* (quoting *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 91 (2000).

pointed out that the plaintiffs had "failed to submit any evidence of ability to pay" or "any evidence of the expenses they are likely to incur."[57]

Here, Rodriguez has shown by declaration that he has little in the way of savings, he supports two adult children and his wife, since losing his job with Castforce his expenses exceed his monthly income, and he and his wife have no substantial access to additional credit.[58] He has also shown that attending a deposition in Sarasota, Florida, would require him to take off work and travel—as well as pay to produce witnesses in another state—further inflating to the already high costs of arbitration.[59] Most importantly however, Rodriguez has absolutely no way to determine or estimate the expenses that he would ultimately face in arbitration. He cannot control the number of depositions Castforce takes, the number of witnesses called at a hearing, the hourly rates and number of hours worked by opposing counsel, or the number of hours the arbitrator—a *commercial* arbitrator, not an employment arbitrator already familiar with the FLSA—will spend in preparation and study. And, of course, without even knowing the defenses to be raised by Castforce, Rodriguez cannot possibly calculate the probability that he will not prevail in arbitration. Under these circumstances, Rodriguez is

---

[57] 2011 U.S. Dist. LEXIS 156699 (N.D. Ga. Nov. 23, 2011).
[58] Exhibit 2 at ¶¶ 20–23.
[59] Exhibit 2 at ¶ 26.

undoubtedly justified in fearing that a prolonged arbitration in another state could devastate his family financially.[60]

### g. The Arbitration Agreement Divests The Arbitrator Of Any Discretion Regarding The Award of Fees And Costs to Castforce If It Prevails

"[B]oth the Supreme Court and the Eleventh Circuit have held that permitting contractual waiver of the other rights and remedies provided alongside the collective action provision in § 216(b)—the right to minimum wage, overtime compensation, liquidated damages, and attorney's fees—would nullify the purposes of the Act."[61]  Just as our courts have rejected prospective waivers of the right to attorney's fees to a prevailing plaintiff, so too should this Court now reject an arbitration term that will ensure dire financial consequences to a plaintiff whose claims do not succeed in arbitration. Congress intentionally provided fees and costs *only* to prevailing Plaintiffs. To permit Castforce to rewrite the FLSA in such a drastic way perverts the statute's very purpose.

In those cases where arbitration agreements with fee-shifting provisions have previously been enforced against employees, courts have pointed out, time

---

[60] Exhibit 2 at ¶ 27.

[61] *Strozier v. E*Trade Fin. Corp.*, 2013 U.S. Dist. LEXIS 56226, *13 (N.D. Ga. Feb. 27, 2013) (Totenberg, J.) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, 65 S. Ct. 895, 902 (1945); *Silva v. Miller*, 307 Fed. App'x 349, 351 (11th Cir. 2009)).

and again, that arbitrators' inherent discretion in making awards mitigates the threat of extreme financial hardship to an employee. Most notably, the Eleventh Circuit justified enforcement of an arbitration agreement where, as other circuits had pointed out, "the arbitrator may determine whether contractual limitations on remedies are enforceable."[62] Similarly, Judge Duffey has noted that arbitrators' discretion "to waive or assess costs and expenses is typical and widespread," and that even when arbitration agreements contain mandatory distribution of costs language, arbitrators typically exercise discretion to determine independently whether these contractual limitations are enforceable or should be enforced in a given case."[63]

While under Rule 43 of AAA's *Employment* Rules, an arbitrator would have the discretion to modify an award based on hardship,[64] in this case Castforce has ensured that ***the arbitrator will have no such discretion*** by requiring that AAA's *Commercial* Rules apply. Rule 47 of the Commercial Rules provides that the

---

[62] *Musnick*, 325 F.3d at 1261 (citations omitted)).

[63] *Zulauf v. Amerisave Mortg. Corp.*, 2011 U.S. Dist. LEXIS 156699 (N.D. Ga. Nov. 23, 2011); *see also Van Dusen v. Swift Transp. Co.*, 2010 U.S. Dist. LEXIS 145553, 2010 WL 9526372 (D. Ariz. Sept. 30, 2010) ("the arbitration provision at issue here contains a hardship provision to defer or waive all or part of the arbitration fees if a contractor shows that the arbitration will impose a substantial financial hardship.").

[64] *See* AAA Employment Rule 43. (Administrative Fees, pg. 30) (". . . AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees."); https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004362.

arbitrator's discretion to grant "just and equitable" relief is limited by "the scope of the agreement of the parties . . . ."[65] Here, the scope of the Agreement allows for no such discretion and stands in stark contrast to the arbitration agreements discussed above - it puports to make an award of fees and costs to a prevailing defendant *mandatory*.

Thus, while under the *Employment* Rules, Rodriguez would be required to pay no more than a $200 filing fee, and would not be liable for Castforce's costs and attorney's fees if he did not prevail,[66] Castforce has required its employees to **contract around the FLSA**, ensuring that they will be threatened with the prospect of financial ruin should their claims fail. In these circumstances, enforcing a mandatory arbitration provision would be inequitable and unjustly deprive Rodriguez of his ability to vindicate his rights under the FLSA.

Recently, a district court in Colorado reached that very conclusion when faced with an FLSA plaintiff who signed an arbitration agreement containing a fee-shifting provision and requiring application of AAA's Commercial Rules:

> . . . The Employment Rules do not require a showing of financial hardship, presumably to ensure that employees are not discouraged from vindicating their statutory rights. Since this is an (alleged)

---

[65] *See* AAA Commercial Rule 47. (Scope of Award, pg. 28); https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103.
[66] See AAA Employment Rules (pp. 33–35).

employment dispute, arguably the Employment Rules should apply. ***At a minimum, an arbitrator should be free to decide which rules apply based on his or her interpretation of the nature of the case. The Arbitration Agreement as written, however, would not permit such flexibility***.[67]

The reasoning of *Nesbitt* is sound and should be applied here. The Agreement at issue frustrates the purposes of the FLSA, radically changes its statutory scheme, and discourages the assertion of workers' FLSA rights by threatening them with financial ruin if they do not prevail.

### h. The Unenforceable Provisions Which Violate The FLSA And Public Policy Cannot Be Severed From The Agreement

After recognizing the serious injury the arbitration agreement would do the FLSA and the frustration of its express purposes, the *Nesbitt* court went on to conclude that the agreement could not be rescued by severing the offending provisions.[68] The same is true here.  As the Eleventh Circuit has stated, "the presence of an unlawful provision in an arbitration agreement may serve to taint the entire arbitration agreement, rendering the agreement completely unenforceable, not just subject to judicial reformation."[69] This is especially true

---

[67] *Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1374 (D. Colo. 2014).
[68] *Id.* at 1375.
[69] *Paladino v. Avnet Computer Techs.*, 134 F.3d 1054 (11th Cir. Fla. 1998) (citations omitted).

where, as here, the clause to be severed is part of an "integrated scheme to contravene public policy."[70]

Florida courts have specifically addressed the issue of severing unenforceable portions of arbitration agreements and consistently refused to do so, even where the agreements contain severability clauses. As in the present case, the arbitration agreement in *Place at Vero Beach, Inc. v. Hanson* "allow[ed] provisions, not portions of provisions, of the Agreement to be severed," and the court determined that it could not compel arbitration by striking only the offending portion of the arbitration provision.[71] Likewise, in *Shotts v. OP Winter Haven, Inc*., the Florida Supreme Court ruled that, even in the presence of a severability clause, where the improper terms of an arbitration went "to the very essence of the agreement," and "the trial court would be forced to rewrite the agreement and add an entirely new set of procedural rules," and severability was not a valid option.[72] So too here, the application of AAA's Commercial Rules and the loser-pays provision are material terms that cannot simply be severed, but would have to be substituted. Florida law does not allow for such substitution.

---

[70] E. Allan Farnsworth, FARNSWORTH ON CONTRACTS § 5.8, at 70 (1990).

[71] 953 So. 2d 773, 2007 Fla. App. LEXIS 6100 (Fla. Dist. Ct. App. 4th Dist. 2007).

[72] 86 So. 3d 456, 2011 Fla. LEXIS 2764 (Fla. 2011); *see also Alterra Healthcare Corp. v. Bryant*, 937 So. 2d 263, 2006 Fla. App. LEXIS 15147 (Fla. Dist. Ct. App. 4th Dist. 2006).

## 4.    CONCLUSION

Based on the foregoing, Plaintiff Rodriguez respectfully requests that the Court DENY Defendant Castforce's Motion to Compel Arbitration and to Dismiss Complaint and that it award such other and further relief as it deems necessary, just and proper.

Dated: October 16, 2015

Respectfully submitted,

3100 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
(404) 979-3150
(404) 979-3170 (f)
benjamin@dcbflegal.com
charlesbridgers@dcbflegal.com
matthew.herrington@dcbflegal.com

DELONG, CALDWELL, BRIDGERS,
FITZPATRICK & BENJAMIN, LLC

*/s/ Mitchell D. Benjamin*
Mitchell D. Benjamin
Georgia Bar No. 049888

*/s/ Charles R. Bridgers*
Charles R. Bridgers
Georgia Bar No. 080791

*/s/ Matthew W. Herrington*
Matthew W. Herrington
Georgia Bar No. 275411

Counsel for Plaintiff