IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RAFAEL RODRIGUEZ, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CASTFORCE, INC., | : | CIVIL ACTION NO. |
| | : | 1:15-CV-03087-AT |
| Defendant. | : | |

## **ORDER**

This matter is before the Court on Defendant Castforce, Inc.'s ("Castforce") Motion to Compel Arbitration and to Dismiss Plaintiff's Complaint [Doc. 8]. Plaintiff Rodriguez alleges in the Complaint that Castforce improperly classified him as an independent contractor so that it could avoid paying minimum and overtime wages as required under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207, and 215. (Compl. ¶ 76.) Castforce moves to compel arbitration of Rodriguez's claims pursuant to a provision of his employment contract. At this stage of the litigation, the sole issue before the Court is whether any or all of Plaintiff's claims should be arbitrated. For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Compel Arbitration [Doc. 8].

**I.    FACTUAL BACKGROUND**

Castforce organizes and stocks displays of products such as sunglasses, cosmetics, gift cards, and packaged foods at retail locations including "CVS,

Walgreens, Rite Aid, Walmart, HEB, Kroger, 7Eleven, and Albertsons." (*Id.* ¶¶ 13, 16.) In 2011, Plaintiff Rodriguez began working for Castforce as a "retail merchandiser." (*Id.* ¶¶ 13, 14, 16.) Retail merchandisers are the ones responsible for physically traveling to retail locations to organize and stock Castforce's displays. (*Id.*)

In 2011, when Rodriguez was initially engaged[1] by Castforce, he signed an Independent Contractor Agreement (the "2011 Agreement") that provided the terms of his engagement with Castforce. (Doc. 15-1.) The 2011 Agreement provided, among other things, that "[a]ny controversy or claim arising out of or related to this Agreement shall be settled by arbitration in accordance with the rules of the American Arbitration Association . . . ." (*Id.*) The 2011 Agreement further provided that "the prevailing party [from the arbitration] shall be entitled to reasonable attorney's fees, costs, and necessary disbursements in addition to any other relief to which that party may be entitled." In 2013, Rodriguez signed another Independent Contractor Agreement (the "2013 Agreement") that contained the same language. (*See* Doc. 8-1.)[2]

---

[1] The Court declines to label the engagement as "employment" because whether Rodriguez was an employee or an independent contractor is at issue in this case.
[2] Castforce initially relied on the 2013 Agreement in its Motion to Compel Arbitration. In response, Rodriguez asserted that the events relevant to his claims occurred prior to 2013 and made a non-retroactivity argument. Castforce then attached the 2011 Agreement to its Reply. Plaintiff has not disputed the authenticity of either Agreement or raised any objections to the Court considering them. The material terms of the 2011 Agreement and the 2013 Agreement are identical. In particular, the "Parties and Term" and "General Provisions" sections contain the same relevant language quoted by the Court in the body of this Order. (Doc. 8-1 at Ex. A; Doc. 15-1 at 1-2.)

The 2011 and 2013 Agreements (together, the "Agreements") also contained the following termination clause, permitting termination by either party without notice:

> This Agreement will become effective when signed by both parties and will continue in effect only for the duration of any work award offered by Castforce and accepted by [Plaintiff]. . . . Either party may terminate this Agreement in writing or verbally at any time with or without cause by notifying the other party.

(*Id.* at 3; Doc. 15-1 at 1.)

On September 1, 2015, Rodriguez filed this action against Castforce alleging that Castforce improperly classified him as an independent contractor and did not properly compensate him under the FLSA. (*Id.* ¶¶ 1, 71.) According to Castforce's brief in support of its Motion to Compel, after receiving Rodriguez's Complaint, Castforce contacted Rodriguez seeking to arbitrate Rodriguez's claims and Rodriguez refused. (Doc. 8 at 2.) On October 7, 2015, more than a month after Rodriguez filed the Complaint and more than one week after Castforce filed its Motion to Compel, Rodriguez's counsel sent an email to Castforce's counsel attempting to clarify its position that the Agreement had been terminated:

> To the extent that [Defendant] did not understand that [Plaintiff's] filing of his FLSA action [in the] United States District Court constituted a termination of the Independent Contractor Agreement, please be advised that pursuant to Paragraphs 1 and 7 of the Agreement, either party has the right to terminate the Agreement unilaterally at any time, with or without cause, verbally or in writing. **[Plaintiff] has exercised that right and terminated the Agreement by filing of his Complaint . . . . It is also [Plaintiff's] position that [Defendant] terminated the Agreement at the time it terminated him.**

3

(Declaration of Mitchell Benjamin ¶¶ 3–7; *see also* Attachment A (emphasis added).) Rodriguez echoes both arguments in his Response to Castforce's Motion to Compel. (Doc. 17 at 10–12.)

Rodriguez further argues that he would have difficulty handling the potential costs of arbitrating his claims. (Decl. of Plaintiff Rafael Rodriguez ¶¶ 13–23.) Specifically, he believes that if he does not win in arbitration, the substantial costs that he would be required to pay under the Agreements' cost-shifting provisions would effectively prevent him from vindicating his rights.

## II. LEGAL STANDARD

Defendant has asked the Court to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*. (Doc. 8 at 1.) The Court is "mindful of the Supreme Court's instruction that 'arbitration is simply a matter of contract.'" *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014), *cert denied*, 135 S. Ct. 144 (2014) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). As a result, gateway issues of arbitrability – including "whether [an arbitration] agreement covers a particular controversy" – are typically for a court to decide. *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014) (quotation marks omitted).

However, a court may determine that parties agreed to arbitrate "the very issue of arbitrability where there is clear and unmistakable evidence that they did so." *Id*. (citing *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 79 (2010)). For example, "when parties incorporate the rules of the [American Arbitration]

4

Association into their contract, they 'clearly and unmistakably' agree[] that the arbitrator should decide whether the arbitration clause [applies]." *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (quoting *Termanix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005)).

Although "the validity of an arbitration agreement is generally governed by the Federal Arbitration Act," "state law generally governs whether an enforceable contract or agreement to arbitrate exists" at all. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367-68 (11th Cir. 2005).[3] A genuine dispute of fact concerning contract formation precludes a court from deciding as a matter of law that the parties did or did not enter into an agreement to arbitrate. *See Granite Rock Co. v. Teamsters*, 561 U.S. at 297-99 (holding that the district court must first "resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce"); *Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 989-90 (11th Cir. 2012); *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785-86 (11th Cir. 2008). If the entire contract's validity (as opposed to the contract's formation) is disputed, the issue of invalidity should typically be decided by the arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006); *see also Regal Lager, Inc. v. The Baby Club on Am., Inc.*, No.

---

[3] The contract at issue here contains a governing law clause stating that Florida law applies to the interpretation and enforcement of the contract. (Doc. 15-1 at 2.) Accordingly, Florida law governs the contract formation issues here.

1:06 CV 0962 JEC, 2006 WL 3388435, at *3 (N.D. Ga. Nov. 21, 2006) ("[A] court should ordinarily resolve a claim that the arbitration clause is itself invalid, whereas an arbitrator should resolve a claim that the entire contract is invalid."). Finally, "a district court considering the making of an agreement to arbitrate should give to the party denying the agreement the benefit of all reasonable doubts and inferences that may arise." *Id.* at 786 (internal quotation marks omitted).

### III.  DISCUSSION

Castforce argues that Plaintiff's claims should be compelled to arbitration. (Doc. 8 at 12.) Defendant contends that the arbitration clause from the General Provisions section of the 2011 Agreement and the 2013 Agreement require Plaintiff's claims to be arbitrated.  Plaintiff responds: (1) the arbitration clause — as well as the "entire agreement[s]" — are unenforceable because the Agreements lack consideration; (2) the arbitration clause is not valid since the Agreements have been terminated; and (3) Plaintiff would not be able to vindicate his rights under the FLSA if the Court compelled him to arbitrate his claims. (Doc. 17 at 10-12, 16.)  Castforce replies that the Agreements are sufficiently enforceable for the Court to compel arbitration and, pursuant to the Agreements, the arbitrator must decide the arbitrability issues raised by Plaintiff.

#### A.  Incorporation of the American Arbitration Association Rules

To start, if the Agreements are (or either one is) enforceable, the Court must compel arbitration.  That is so because "when parties incorporate the rules

of the [American Arbitration] Association into their contract, they 'clearly and unmistakably agree[ ] that the arbitrator should decide whether the arbitration clause [applies].'" *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (quoting *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005)). Plaintiff and Defendant contracted that "[a]ny controversy or claim arising out of or related to this Agreement shall be settled by the arbitration in accordance with the rules of the American Arbitration Association then in effect."[4] (Doc. 8, Exhibit A.) American Arbitration Association ("AAA") Commercial Rule 7 dictates that the arbitrator both "shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part" and "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim[.]" Accordingly, under *Nutraceuticals*, *Terminix*, and the AAA Rules then in effect, Plaintiff and Defendant have clearly and unmistakably agreed to let an arbitrator decide the existence of the arbitration agreement and whether the claims against are arbitrable.

---

[4] The Complaint in this case was filed on September 1, 2015. The American Arbitration Rules "then in effect" are those Amended and Effective October 2013, *available at* https://www.adr.org/aaa/faces/rules/searchrules/rulesdetail;jsessionid=p85jk8MgMVlKtiTpW k52IS-IGQjzBSFcjpo9QtrXkUBwpYZPMCjP!-1737483504?doc=ADRSTAGE2025278&_afrLoop=1917566712707368&_afrWindowMode=0& _afrWindowId=null#%40%3F_afrWindowId%3Dnull%26_afrLoop%3D1917566712707368%26 doc%3DADRSTAGE2025278%26_afrWindowMode%3D0%26_adf.ctrl-state%3Dgedne88ik_4.

### B.   Formation, validity, and termination

However, Rodriguez challenges certain aspects of the applicability to the Agreements, including the Agreements' very formation.  Section 4 of the FAA requires a district court to compel arbitration of a dispute once it is satisfied "that the making of the agreement for arbitration . . . is not in issue."  9 U.S.C. § 4 (2012).  Plaintiff does not contest that the parties actually entered into an agreement — *i.e.*, that a contract was formed.  Instead, Plaintiff contends the contract was illusory, invalid, and not binding.

In deciding whether the validity of the agreement is in issue when a party raises these challenges, courts distinguish between "claims that challenge the contract generally and claims that challenge the arbitration provision itself." *Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 876 (11th Cir. 2005) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967)).  Where a claim challenges the contract in general — and not the arbitration agreement in particular — that claim must be decided by an arbitrator.  "In this case," Rodriguez argues, "not only is the arbitration provision illusory, but the *entire Agreement* is illusory[.]"  (Doc. 14 at 13 (emphasis in original).)  Rodriguez's challenge is therefore directed at the entire agreement and does not wrest from the arbitrator the authority conferred by incorporating the AAA Rules to decide the arbitrability of Plaintiff's claims.

Assuming for the sake of argument that Rodriguez's argument could be construed to address the arbitration provisions in particular, the Court is not

8

persuaded that the fact that the contracts can be terminated at any time by either party without cause makes them "illusory" under Florida law. To start, Rodriguez supports this proposition by citing to cases that almost categorically reference contracts that are terminable by only one of the parties unilaterally but that do not give that right to the other party. Courts confronted with contracts more akin to the one currently at issue have found the contract enforceable under Florida law. *See, e.g.*, *Britt Green Trucking Inc. v. FedEx Nat'l LTL, Inc.*, 511 F. App'x 848, 850-51 (11th Cir. 2013) (reversing determination that a contract permitting either party to "terminate at any time, without cause" was illusory under Florida law).

Rodriguez also attempts to save his federal court case by arguing that the agreement was terminated — either by him or by Castforce — and therefore cannot be enforced. However, an arbitrator rather than the Court should address whether the arbitration clause is in fact still enforceable after the Agreement's termination. Again, AAA Rule 7 gives the arbitrator "the power to determine the existence or validity of a contract of which an arbitration clause forms a part."

### C.     Affording arbitration

Rodriguez argues that he will not be able to vindicate his rights under the FLSA if he is required to go arbitration. He also argues that the Agreements are fundamentally at odds with rights afforded to Plaintiffs — and not Defendants — under the FLSA.

9

In particular, Rodriguez contends that the FLSA's fee-shifting provision applies only to prevailing plaintiffs, whereas this Agreement has a fee-shifting provision that is not party-specific. That would not be so problematic, Rodriguez argues, if the arbitration were to occur under the AAA Employment Rules. For if the Agreement specified that the arbitration would occur under the AAA Employment Rules, Rodriguez would be required to pay only a small filing fee, and he would not be liable for attorney's fees should he not prevail. (*See* AAA Employment Arbitration Rules and Mediation Procedures, Rules Amended and Effective November 1, 2009, Rules 39(d), 43-45.) However, the Agreement specifies that the AAA Commercial Rules will govern the arbitration, and the Commercial Rules do not permit the arbitrator, in awarding attorney's fees, to stray from the language of the Agreement. Nor do they permit derogations, based on hardship, from the administrative fees, which are higher in the case of commercial arbitration than employment arbitration. Based on these discrepancies – and particularly the non-party-specific shifting of attorney's fees – Rodriguez contends Castforce has effectively contracted around critical protections of the FLSA.

This is essentially a void-for-unconscionability argument. Under Florida law:

> Both procedural unconscionability and substantive unconscionability must exist before the provision is unenforceable. Procedural unconscionability exists when the individualized circumstances surrounding the transaction reveal that there was no 'real and voluntary meeting of the minds' of the contracting parties.

10

> Substantive unconscionability exists when the terms of the contractual provision are unreasonable and unfair.

*Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir. 1989) (citations omitted).

Plaintiff's unconscionability argument has some persuasive appeal, but it is premature. "The party seeking to avoid arbitration under [an agreement containing a fee-shifting provision] has the burden of establishing that enforcement of the agreement would 'preclude' him from 'effectively vindicating [his] federal statutory right in the arbitral forum.'" *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1259 (11th Cir. 2003) (quoting *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000)). Rodriguez has presented some evidence of his ability to pay and some evidence of what arbitration might cost. (*See* Declaration of Rafael Rodriguez ¶¶ 11-27, Doc. 14-2.) However, as was the case in *Musnick*, whether Rodriguez:

> will, in fact, incur attorneys' [or other] fees in this matter depends entirely on whether he prevails in arbitration. If he does, he will incur no fees at all under the agreement's 'loser pays' provision. In this event, obviously, he will not have been deprived of any statutory right or remedy by the mandatory arbitration.

*Id.* at 1261. *See also Summers v. Dillard's, Inc.*, 351 F.3d 1100, 1101 (11th Cir. 2003) (holding that before arbitration it was "unclear . . . which party may prevail at arbitration and [the plaintiff] may seek judicial review of an award if she feels that her available remedies were hindered").

Thus, at this point, the Court does not reach the issue of whether the Agreement is unconscionable. The Court expects the arbitrator to consider that

question at a very preliminary stage. As this is unquestionably an employment case, Castforce should, if it is genuinely interested in a fair arbitration, consent to the arbitration proceeding under the AAA Employment Rules, with an arbitrator selected from the Employment Panel.

Although Rodriguez has also failed to meet, at this juncture, "his burden to demonstrate that mandatory arbitration of his claim would result in prohibitive costs to him," *Musnick*, 325 F.3d at 1262, he may return to the Court for appropriate relief at the appropriate time. For example, "[o]nce the arbitrator has reached the issues of costs and fees, those items will no longer be speculative, and any issue presented thereby will be ripe for decision." *Id*.[5] Until then, though, Rodriguez's argument in this regard is insufficient to justify a denial of Castforce's Motion to Compel. The Court anticipates, however, that Castforce and the AAA will give appropriate consideration to the concerns identified by the Court here.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Castforce's Motion to Compel Arbitration [Doc. 8] and the claims in this case are

---

[5] The Court notes that *Musnick* relied on *First Option*'s "manifest disregard of the law" justification for vacatur of an arbitral award that could potentially shifts fees such that an individual might be deprived of the potential to vindicate her rights. The Court also recognizes that the Supreme Court's subsequent decision in *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008) "casts serious doubt" on the legitimacy of that very ground for vacatur. *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1322 (11th Cir. 2010). Nonetheless, *Musnick* remains the controlling precedent in this circuit on this issue, and it has been cited with approval after both *Hall Street* and *Frazier*. *See, e.g.*, *Matthews v. Ultimate Sports Bar, LLC*, 621 F. App'x 569, 572 (11th Cir. 2015).

**COMPELLED** to arbitration.  In the meantime, the case is **STAYED** and **ADMINISTRATIVELY CLOSED**[6] pending the outcome of arbitration.

    **IT IS SO ORDERED** this 7th day of June, 2016.

                                            _____
                                            **Amy Totenberg**
                                            **United States District Judge**

---

[6] Administrative closure of a case does not prejudice the rights of the parties to litigation in any manner.  The parties may move to re-open an administratively closed case at any time.